IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

          *Plaintiff*,

v.

COREY GADSDEN,

          *Defendant*.

Criminal No. 2:09-305

## OPINION

### I.        Introduction

Pending before the Court is a pro se motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), filed by defendant Corey Gadsden ("Gadsden") (ECF No. 425), with exhibits in support.  Pursuant to the court's Administrative Order 20-mc-629, counsel was appointed under the Criminal Justice Act ("CJA") to review the pro se motion and advise the court whether a counseled supplemental filing would be forthcoming.   After review, counsel notified the court that a supplement to the pro se motion would not be filed.  The government filed a response in opposition to the motion on December 17, 2020 (ECF No. 429), and the motion is now ripe for disposition.

In the motion, Gadsden argues that he is entitled to compassionate release due to COVID-19 because he is: (1) serving his sentence near Atlanta, Georgia; (2) 45 years old; (3) African-American; (4) asthmatic; and (5) overweight.  Gadsden also cited his medical history of Hodgkins lymphoma and Hilar adenopathy.  Gadsden represents that he has strong family support if released, maintained clean conduct in prison and furthered his rehabilitation by participating in programs

offered by the Bureau of Prisons ("BOP").  Gadsden contends that the §3553(a) factors support his compassionate release.

The government opposes Gadsden' motion.  The government concedes that the motion is ripe because Gadsden exhausted his administrative remedies, but argues that he did not establish extraordinary and compelling reasons for release, he poses a danger to the community, and release is not warranted after considering the § 3553(a) factors and guidelines policies (ECF No. 429).


## II.      Procedural History

On November 6, 2012, Gadsden pleaded guilty to counts 1, 2 and 4 of the Third Superseding Indictment in this case, which charged him with conspiracy to distribute 1 kilogram or more of heroin from 2015 to 2019, possession with intent to distribute 100 grams or more of heroin on August 27, 2009, and possession of a prohibited item (a cell phone) while incarcerated.

Pursuant to the parties' plea agreement, the government agreed to dismiss count 3 of the Third Superseding Indictment, which charged Gadsden with conspiracy to retaliate against a confidential informant.  The parties agreed that although the charge at count 3 would be withdrawn, the government would present evidence about it for the court's consideration in imposing sentence. Presentence Investigation Report ("PSI") ¶ 17 (ECF No. 362).  Gadsden denied involvement. Gadsden's brother and co-defendant, Omar Gadsden, pleaded guilty to count 3.  The court did not make specific findings about count 3 in imposing sentence.  Pursuant to the plea agreement, the government also agreed to withdraw the second § 851 Information it filed to establish a prior felony drug conviction (which would have resulted in a mandatory sentence of life imprisonment).

The PSI calculated a total offense level of 35.  Gadsden was in criminal history category VI based on his extensive criminal background, in addition to the career offender provision.  The advisory guideline range was 292-365 months of imprisonment.  On September 10, 2013, Gadsden

was sentenced to a term of imprisonment of 240 months, pursuant to the stipulated sentence in the parties' plea agreement (ECF No. 360).

Gadsden did not file a direct appeal.  On May 21, 2025, the court denied Gadsden's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2), after taking into account the policy statement set forth at USSG § 1B1.10 and the sentencing factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable (ECF No. 373).

Gadsden is currently incarcerated at USP-Atlanta, a medium-security penitentiary in Atlanta, Georgia. He is now 46 years old. His projected release date is February 5, 2027.  The Bureau of Prisons ("BOP") website reflected that on January 8, 2021, there were 19 inmates and 12 staff with active cases of COVID-19.  https://www.bop.gov/coronavirus/index.jsp, last visited January 8, 2021.  There are 1,854 total inmates at the facility. https://www.bop.gov/locations/institutions/atl/, last visited January 8, 2021.

Gadsden requested compassionate release due to COVID-19 from the warden on April 9, 2020 (ECF No. 425-1).  The request was rejected on April 14, 2020, with a handwritten explanation:  "You do not qualify for home confinement due to [your] recidivism being HIGH." Id.  Gadsden waited more than 30 days before seeking relief in court.  Gadsden's motion for compassionate release is now ripe to be decided by the court.

## III.   Discussion

### A.  Applicable Law

Gadsden seeks compassionate release from imprisonment. A district court has only limited authority to "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); United States v. Savani, 733 F.3d 56, 60 (3d Cir. 2013). The Third Circuit Court of Appeals has recognized that Congress enacted exceptions to this "general rule of finality" in 18 U.S.C. § 3582(c)(1). United States v. Easter, 975 F.3d 318, 323 (3d Cir. 2020) (explaining that "[s]entence

3

modifications under § 3582(c) constitute 'exception[s] to the general rule of finality' of sentences")

(quoting Dillon v. United States, 560 U.S. 817, 824 (2010)).

Section 3582(c)(1)(A) provides:

> **(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—
>
> > (1) in any case--
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
> > >
> > > > (i) extraordinary and compelling reasons warrant such a reduction; or
> > > >
> > > > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
> > > >
> > > > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission….

18 U.S.C. § 3582(c)(1)(A). The foregoing statutory provision sets forth a *three-part analysis* for district courts to utilize to resolve a motion for compassionate release. The Third Circuit Court of Appeals has instructed that pursuant to § 3582(c)(1)(A), "a district court 'may reduce [a federal inmate's] term of imprisonment' and 'impose a term of probation or supervised release … if it finds that … extraordinary and compelling reasons warrant such a reduction.'" United States v.

4

Pawlowski, 967 F.3d 327, 329 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). "[B]efore granting compassionate release," however, "a district court must 'consider[] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." Id. (quoting 18 U.S.C. § 3582(c)(1)(A)). The court must also consider whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission, 18 U.S.C. § 3582(c)(1)(A). United States v. Doe, No. 20-2650, 2020 WL 6328203, at *1, n.2 (3d Cir. Oct. 29, 2020).

Based upon the foregoing, to grant Gadsden compassionate release under § 3582(c)(1)(A), the court must analyze whether: (1) extraordinary and compelling reasons exist for his release; (2) compassionate release is warranted in consideration of the § 3553(a) factors;[1] and (3) compassionate release is consistent with applicable policy statements issued by the Sentencing Commission.

Gadsden bears the burden of proof by a preponderance of the evidence to show that he is entitled to compassionate release. United States v. Smith, No. CR 9-187, 2020 WL 4047485, at *2 (W.D. Pa. July 20, 2020) (citing United States v. Adeyemi, No. CR 06-124, 2020 WL 3642478, at

---

[1]    The factors set forth in 18 U.S.C. § 3553(a) are:

- the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1);

- the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D);

- the sentencing range established by the Sentencing Commission, § 3553(a)(4);

- any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5);

- the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6); and

- the need to provide restitution to any victims of the offense, § 3553(a)(7).

*16 (E.D. Pa. July 6, 2020)). Courts have held that to satisfy this burden, a movant must produce evidence to the court. See e.g., United States v. Matthews, Crim. Action No. 09-612-1, 2020 WL 5217132, at *6 (E.D. Pa. Sept. 1, 2020); United States v. Brunetti, Crim. Action No. 2020 WL 4516541, at *6 (E.D. Pa. July 31, 2020); United States v. Richardson, Crim. No. 18-507, 2020 WL 2200853, at *2 (E.D.N.C. May 6, 2020).

### B.  Extraordinary and Compelling Reasons

Prior to the enactment of the First Step Act on December 21, 2018, only the Director of the BOP could file a motion for a sentence reduction under §3582(c)(1)(A)(i).  Ray v. Finley, No. 3:19-CV-0988, 2019 WL 5569616, at *3 (M.D. Pa. Oct. 29, 2019). The First Step Act amended § 3582(c)(1)(A), which now provides that "a motion for reduction in sentence may be filed by either the Director of the BOP or a federal inmate" after the federal inmate exhausts administrative remedies. Id.

"Congress did not define 'extraordinary and compelling reasons' except to provide 'rehabilitation…alone' does not suffice." Adeyemi, 2020 WL 3642478, at *7 (quoting 28 U.S.C. § 994(t)). The Third Circuit Court of Appeals has explained that "compelling and extraordinary" reasons for the reduction of a sentence are "defined by the commentary to policy statement U.S.S.G. § 1B1.13." United States v. Handerhan, No. 19-1904, 789 F. App'x 924, 925 (3d Cir. 2019) (citing United States v. Barberena, 694 F.3d 514, 521 n.10 (3d Cir. 2012)). "That commentary currently lists four categories of such reasons: (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; and (4) 'other reasons' as determined by the Director of the Bureau of Prisons." Id. (quoting U.S.S.G. § 1B1.13 cmt. n.1.). The court in Adeyemi explained the first three categories as follows:

> The first category includes incarcerated persons suffering from terminal illnesses, such as metastatic solid-tumor cancer, amyotrophic lateral sclerosis, end-stage organ disease, and advanced dementia, or those suffering from medical

conditions, impairments, or deteriorations due to age that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."…The second category includes incarcerated persons who are at least sixty-five years old, experience a serious deterioration in physical or mental health because of the aging process; and have served at least ten years or seventy-five percent of their term of imprisonment, whichever is less….The third extraordinary and compelling reason may arise where the primary caregiver of the incarcerated person's minor child or children died or became incapacitated or where the incarcerated person's spouse became incapacitated and he is the only available caregiver for the spouse.

Adeyemi, 2020 WL 3642478, at *7 (citing U.S.S.G. § 1B1.13 cmt. n.1(A)-(C)).

The court of appeals in Handerhan explained that "[t]he Sentencing Commission has not yet amended § 1B1.13 or its commentary to account for the First Step Act…[and] the District Courts are divided on whether and how to apply the catch-all 'other reasons' category and its reference to determinations made by the Director." Handerhan, 789 F. App'x. at 925 n.1 (citing United States v. Fox, No. 2:14-cr-03-DBH, 2019 WL 3046086, at *2 (D. Me. July 11, 2019)). While U.S.S.G. § 1B1.13 was not updated to reflect the First Step Act amendments, the Commission's policy statement "does not constrain a court's independent assessment about whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)." United States v. Somerville, No. 2:12-CR-225-NR, 2020 WL 2781585, at *6-7 (W.D. Pa. May 29, 2020) (holding the court has authority to independently assess whether there are "extraordinary and compelling reasons" to reduce a defendant's sentence).[2]

---

[2]    This is the conclusion shared by a "vast majority" of courts that considered "whether courts may independently evaluate extraordinary and compelling reasons to reduce sentences" under the catchall provision of U.S.S.G. § 1B1.13. Adeyemi, 2020 WL 3642478, at *10 (collecting decisions); United States v. Andrews, Crim. Action No. 05-280-02, 2020 WL 4812626, at *3 (E.D. Pa. Aug. 19, 2020) (finding that district courts "overwhelmingly conclude that a court can make an independent determination of what constitutes extraordinary and compelling reasons"). For example, the court in Adeyemi explained that the directive in U.S.S.G. § 1B1.13 that the Director of the BOP determines whether "other reasons" exist for the compassionate release of a defendant is not authoritative because it contradicts with the plain language of 18 U.S.C. § 3582(c)(1)(A), which requires the court to find extraordinary and compelling reasons for a defendant's release. Adeyemi, 2020 WL 3642478, at *14-15 (citing United States v. LaBonte, 520 U.S. 751, 764

"The starting point in discerning congressional intent is the existing statutory text[.]" <u>Lamie v. U.S. Tr.</u>, 540 U.S. 526, 534 (2004). "Extraordinary and compelling" is not defined by statute, and, therefore, the court must give the terms their "'ordinary meaning.'" <u>United States v. Diallo</u>, 575 F.3d 252, 256 (3d Cir. 2009) (quoting <u>Moskal v. United States</u>, 498 U.S. 103, 108 (1990)). The court in <u>Somerville</u> explained:

> The word "extraordinary" is commonly understood to mean "going beyond what is usual, regular, or customary," or "exceptional to a very marked extent." *Extraordinary*, Merriam-Webster Dictionary (2020); <u>see also</u> *Extraordinary*, Black's Law Dictionary (11th ed. 2019) ("Beyond what is usual, customary, regular, or common.").

> The word "compelling" means "forceful," "demanding attention," or "convincing." *Compelling*, Merriam-Webster Dictionary (2020); <u>see also</u> *Compelling Need*, Black's Law Dictionary (11th ed. 2019) ("A need so great that irreparable harm or injustice would result if it is not met.").

> Thus, at a minimum, § 3582(c)(1)(A)(i) requires a justification for release that is both unusual (i.e., unique to the inmate, and beyond the ordinary hardship of prison) and significant (i.e., serious enough to make release appropriate).

<u>Somerville</u>, 2020 WL 2781585, at *7.

Gadsden points to the following "extraordinary and compelling" circumstances for compassionate release: (1) his elevated risk from COVID-19 at USP-Atlanta based on his age, race and medical conditions (asthma, obesity, and history of Hodgkins lymphoma and Hilar adenopathy); and (2) his rehabilitation while incarcerated.

### i. COVID-19

The court in <u>Somerville</u> established a two-part analysis to determine whether the COVID-19 pandemic represents an extraordinary and compelling reason for a defendant's release. The court explained:

> While the Third Circuit has not articulated a definitive standard to be applied to § 3582(c) motions in this context, it has observed generally that the mere

---

(1997); <u>Stinson v. United States</u>, 508 U.S. 36, 37 (1993)).

"existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner[.]" United States v. Roeder, 807 Fed. Appx. 157, 161 n.16 (3d Cir. 2020). From that, the Court infers that a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a ***uniquely high risk*** of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held.

Somerville, 2020 WL 2781585at *4.  (emphasis added). The court will apply the two-part test set forth in Somerville to determine whether Gadsden set forth extraordinary and compelling reasons for his release based upon his medical conditions and the situation at USP Atlanta during the COVID-19 pandemic.  In sum, Gadsden has the burden to show that: (1) he suffers from a sufficiently serious medical condition, or advanced age, that places him at a uniquely high risk of grave illness or death if infected by COVID-19 (extraordinary); and (2) there exists an actual, non-speculative risk of exposure to COVID-19 at USP Atlanta (compelling).

 a. Whether Gadsden faces a uniquely high risk from COVID-19

In his motion, Gadsden contends that he is at uniquely high risk of grave illness or death from COVID-19 because of his age, race and medical conditions (asthma, obesity, and history of Hodgkins lymphoma and Hilar adenopathy).  Gadsden provided medical records with his motion, which the court reviewed, although there are no records after February 5, 2019.

Gadsden's age (46) is well below the threshold set in the guidelines policy, U.S.S.G. § 1B1.13, and there is no evidence that his age poses a uniquely high risk of serious consequences from COVID-19.  Gadsden's race, standing alone, does not justify compassionate release.  In *United States v. Green*, No. CR 05-205, 2020 WL 3642860 (W.D. Pa. July 6, 2020), the court noted the following comment from the Centers for Disease Control ("CDC"):

Current data suggests that African-Americans have been disproportionately affected by COVID-19 hospitalizations and deaths. It is unclear, however, whether race is an independent risk factor or whether the adverse outcomes are caused by other factors such as living conditions (such as population density), work conditions

(including service in essential industries), lack of access to health care or the prevalence of other underlying medical conditions. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/racial-ethnic-minorities.html (last visited June 23, 2020).

*Id*. at *4.

The degree of obesity determines the severity of the risk. A person with a Body Mass Index ("BMI") of 48 (i.e., morbidly obese), poses greater concern than a person with a BMI of 31 (i.e., slightly obese). United States v. Grasha, No. 18-325, 2020 WL 5747829 at *4 (W.D. Pa. Sept. 24, 2020). The records provided by Gadsden do not provide his current BMI. The government calculated a BMI of 39.1 based upon Gadsden's height and weight recorded on February 5, 2019 (ECF No. 425-2).[3] The court accepts this BMI calculation and the government's concession that Gadsden's obesity constitutes a serious medical condition that would provide a basis for compassionate release.

Gadsden did not meet his burden to establish that he has asthma. He did not provide medical records relating to asthma and there was no reference to asthma in the PSI. The medical records reflect that Gadsden's mediastinum and hila are stable and he denied any lymph node swelling (ECF No. 425-2). The records reflect that Gadsden was treated for Hodgkins Lymphoma in 2005, but has since been lymphoma free (ECF No. 425-2). A history of cancer in 2005 (now in remission), does not present a medical condition that provides a basis for compassionate release. United States v. Mason, No. CR 18-329, 2020 WL 4034835, at *3 (W.D. Pa. July 17, 2020).

In sum, other than his obesity, Gadsden failed to meet his burden to produce evidence to establish that he faces a uniquely high risk of serious consequences from COVID-19.

---

[3] The records reflect a note that Gadsden was counseled "to continue weight loss" and assessing his obesity as "improved." (ECF No. 425-2). The court observes that Gadsden's hyperglyceridemia and "hypertension, benign essential" are being treated by medication and he did not cite those conditions as a basis for release.

      b.  Risk of exposure at USP Atlanta

The court takes judicial notice that there are current cases of COVID-19 at USP Atlanta, with a 18 inmates and 12 staff testing positive for COVID-19. Although the court recognizes the BOP's significant efforts to minimize and control the spread of the pandemic, it is well-established that it is difficult to engage in social distancing and other mitigation efforts in a congregate setting such as a prison.  The court will assume, for purposes of this motion, that there is an actual, non-speculative risk that Gadsden will be exposed to COVID-19 at USP Atlanta.

      c.  Conclusion about COVID-19

The court will assume, for purposes of this motion, that there is an actual risk that Gadsden will contract COVID-19 at USP Atlanta and finds, based on the government's concession, that Gadsden established that he has a serious medical condition (obesity) that places him at "*uniquely high risk*" of grave illness if he contracts COVID-19.[4]    Gadsden, therefore, has shown an extraordinary and compelling reason for his compassionate release.

---

[4]    The court notes that the COVID-19 conditions at USP Atlanta, alone, do not constitute extraordinary and compelling reasons for Gadsden's release. The Third Circuit Court of Appeals has recognized:

> [T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread. See generally Federal Bureau of Prisons, COVID-19 Action Plan (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/20200313_COVID19.jsp.

United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). Thus, as the court explained in Somerville, a defendant must show there is an actual risk he or she will contract COVID-19 while incarcerated and that he or she is particularly at-risk of suffering grave illness if he or she contracts COVID-19.

### ii.  Gadsden' Rehabilitation while Incarcerated

Gadsden points to his rehabilitation while incarcerated and family support as further evidence of the extraordinary and compelling circumstances presented in this case. While incarcerated, Gadsden represents that he completed educational and vocational courses, but he did not provide a record of those courses.  Gadsden' efforts to rehabilitate himself while incarcerated are commendable but do not satisfy his burden to show his entitlement to compassionate release. The court will consider his rehabilitative efforts as part of its assessment of the § 3553(a) factors.

### IV.    Section 3553(a) factors

The compassionate release statute states that a court may reduce the term of imprisonment "after" it considers the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable.  18 U.S.C. § 3582(c)(1)(A).  Because the court concluded, based on the government's concession, that Gadsden's obesity is an extraordinary or compelling reason for release, it must address the § 3553 factors and guidelines policies in its analysis.  In doing so, the court will consider Gadsden's continuing post-sentence rehabilitation and family support.  *See United States v. Tidwell*, No. CR 94-353, 2020 WL 4504448, at *7 (E.D. Pa. Aug. 5, 2020) (court's review of the § 3553(a) factors must consider the "most up-to-date picture" of the defendant's "history and characteristics," including evidence of rehabilitation).

The court weighed the § 3553(a) factors on September 13, 2013, when imposing the original sentence, and again in 2015, in denying Gadsden's motion for a reduced sentence under 18 U.S.C. § 3582(c)(2).  The main reason for the sentence was the binding plea agreement entered into by the government and Gadsden. The court accepted the terms of the agreement, even though it represented a substantial downward variance.  The court noted defendant's difficult childhood, the serious nature of the drug crimes, and his extensive criminal history.  The court concluded that

a term of imprisonment of 240 months, which was the statutory mandatory minimum term of imprisonment, was sufficient, but no greater than necessary, to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from further crimes by Gadsden.

The government emphasizes that Gadsden poses a danger to the community if released. The "danger to the community" policy consideration in U.S.S.G. § 1B1.13 is somewhat similar to the § 3553(a)(2)(C) sentencing factor that a sentence "protect the public from further crimes of the defendant."  The government argues that despite his rehabilitative efforts and family support, Gadsden remains a danger to the community based on his lifelong involvement in crime and his lengthy heroin distribution activities, which continued even after he was indicted (ECF No. 429 at 12-14).  He has three prior felony drug convictions and was involved in an armed robbery (PSI, ECF No. 362).  The government also points out that Gadsden induced a corrections officer to smuggle a cell phone into jail on his behalf and that being on supervision did not prevent Gadsden from committing the instant offenses.

Upon reexamining the § 3553(a) factors, the court adheres to its original determination. Gadsden already received the benefit of a significant downward variance from the advisory guideline range and the government's agreement to withdraw a second § 851 Information.  A reduction of his sentence would not be consistent with the statutory sentencing purposes or the terms of the parties' plea agreement, and would be below the statutory mandatory minimum established by Congress.  The court agrees with the government that based upon his history of disrespect for the law, Gadsden would pose a significant danger to the community if released and that a term of imprisonment of 240 months is warranted.

**V.      Conclusion**

Once a court imposes a sentence and it becomes final, it may not be modified unless an exception to the rule of finality applies in the case. Here, Gadsden satisfied his burden under § 3582(c)(1)(A) to show that an extraordinary and compelling reason exists, but after consideration of the § 3553(a) factors, his premature release from imprisonment is not warranted. His motion for compassionate release (ECF No. 425) will, therefore, be denied without prejudice to reassert if his circumstances materially change.

An appropriate order will be entered.


Dated: January 20, 2021                    BY THE COURT:

                                          /s/ Joy Flowers Conti
                                          Joy Flowers Conti
                                          Senior United States District Judge